UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PHYLLIS A. JENNISON,

                            Plaintiff,

             -against-                                  3:10-CV-00164 (LEK/DEP)

THE HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                            Defendant.
_____

## MEMORANDUM-DECISION and ORDER

      Presently before the Court are The Hartford Life and Accident Insurance Company ("Defendant")'s Motion for summary judgment, Phyllis A. Jennison ("Plaintiff")'s Cross-motion for summary judgment, and Defendant's Motion to strike Plaintiff's cross-motion. Motion for summary judgment (Dkt. No. 21) ("Mot. for S.J."); Cross-motion for summary judgment (Dkt. No. 23) ("Cross-mot. for S.J."); Motion to strike (Dkt. No. 29) ("Mot. to Strike"). In the Complaint, Plaintiff alleges that Defendant improperly denied her claim for long term disability ("LTD") benefits, in violation of the Employee Retirement Income Security Act ("ERISA") and in breach of their contract, an allegation which Defendant denies. Complaint (Dkt. No. 1) ("Compl.") at 5-7; Answer (Dkt. No. 13) at 4-5. For the reasons explained below, the Court denies Defendant's Motion to strike, grants Defendant's Motion for summary judgment, and denies Plaintiff's Cross-motion for summary judgment.

**I. BACKGROUND**

      In November 2004, Plaintiff began working as an insurance specialist for American International Group, Inc. ("AIG"), where she participated in a group LTD insurance plan (the

"Plan") administered by Defendant through her employer.  Defendant's Statement of material facts (Dkt. No. 21-19) ("Def. 7.1 Statement") at 1-2; Plaintiff's Response to Defendant's Statement of material facts (Dkt. No. 22-2) ("Pl. Resp. to 7.1 Statement") at 1.  The ERISA-regulated Plan provided for disability benefits in the event that Plaintiff should be unable to perform an essential job duty for at least six months as a result of sickness or other causes.  Def. 7.1 Statement at 2-3; Pl. Resp. to 7.1 Statement at 1.

Following a diagnosis of sciatic neuralgia and lumbar disc space narrowing in October 2008, Plaintiff was granted short term disability leave from AIG for her lower back pain.  Declaration of Kim M. Huber ("Huber Decl."), Jennison 201, 263.[1]  While on leave, Plaintiff continued to seek treatment for her chronic back pain, as well as fibromyalgia and arthritis.  Id., Jennison 234-44, 258-60.  A Functional Capacity Evaluation ("FCE") conducted on January 14 concluded that Plaintiff was capable of returning to work, as long as she changed sitting position every thirty minutes, avoided repetitive bending and lifting, and did not lift more than twenty pounds; thus, her short term leave ended January 28, 2009.  Id., Jennison 201, 212-16.  Plaintiff subsequently filed for LTD benefits on February 10, 2009.  Id., Jennison 347-50.  To assess her claim, Defendant solicited and reviewed Plaintiff's medical records and the opinions of her treating physicians.  Id., Jennison 117-39.

Medical records from that period show that Plaintiff was being treated by Dr. David Zander ("Dr. Zander") and Family Nurse Practitioner Jonathan Briggs ("FNP Briggs") for primary care, Rheumatologist Dr. Paul Dura ("Dr. Dura"), Chiropractor Dr. Douglas Taber ("Dr.

---

[1] Documents in the administrative record are Bates stamped "Jennison 001" through "Jennison 417" and are attached to the Huber Declaration (Dkt. No. 21) as Exhibits A and B (Dkt. No. 21:2-11).

Taber"), Orthopedist Dr. Erik Hiester ("Dr. Hiester"), and Neurologist Dr. Aamir Rasheed ("Dr. Rasheed"). Id., Jennison 234-35, 258, 262, 294, 308. According to their records, Dr. Zander and FNP Briggs treated Plaintiff for fibromyalgia-related paresthesia and degenerative disc disease, but ultimately concurred with the FCE that Plaintiff could return to her sedentary job, as long as she changed sitting position every thirty minutes. Id., Jennison 234-44, 321, 361, 372. Dr. Dura treated Plaintiff for her knee and back pain: x-rays of those areas in February 2009 revealed mild disc degeneration in her thoracic region and mild osteoarthritis in her right knee. Id., Jennison 254-55, 258-60. In the Attending Physician's Statement of Functionality ("APSF") he completed March 6, 2009, Dr. Dura estimated that Plaintiff could sit for two hours at a time, eight hours a day. Id., Jennison 359-60.

   Plaintiff's chiropractor, Dr. Taber, diagnosed her sciatic neuralgia and treated her back pain in Fall 2008. Id., Jennison 262-73. When she did not show improvement, he sent Plaintiff for a consultation with Dr. Hiester. Id., Jennison 273. Dr. Hiester reviewed Plaintiff's lumbar spine MRI and ordered MRIs for her brain and cervical spine, which confirmed Plaintiff's degenerative disc disease. Id., Jennison 403-05. Unable to offer any promising treatment beyond pain medication, Dr. Hiester recommended that Plaintiff consult with Dr. Rasheed. Id., Jennison 294. Focusing on Plaintiff's fibromyalgia symptoms, neuropathy and paresthesia, Dr. Rasheed ordered extensive testing, including Electromyography and Nerve Conduction Studies to measure electrical activity in the muscles and nerves of her legs and arms; test results were all unremarkable. Id., Jennison 306-16. Finding further neurologic work-ups to be unnecessary, Dr. Rasheed recommended Plaintiff followup with Dr. Dura. Id. When contacted by Defendant about Plaintiff's claim for LTD benefits, both Drs. Taber and Hiester deferred to FNP Briggs and

Dr. Rasheed did not respond. Id., Jennison 110, 204, 223.

Based upon the FCE recommendation, as well as the APSFs by FNP Briggs and Dr. Zander, and Dr. Dura, Defendant rejected Plaintiff's claim for LTD benefits on June 19, 2009. Id., Jennison 107-12. Plaintiff requested an appeal and in support of her claim, submitted a letter from Dr. Ralph Ortiz ("Dr. Ortiz"), stating that she was "100% totally disabled." Id., Jennison 190-92. Plaintiff's appeal was denied in December 2009, based on a report from Dr. Robert Marks ("Dr. Marks"), a physician Board Certified in Neurology and Physical Medicine & Rehabilitation, who conducted an independent medical review of the file and interviewed Plaintiff's treating physicians. Id. Jennison 94-98, 151-60. Dr. Marks concluded that Plaintiff could return to sedentary work, provided she could modify her posture or stand as needed, with restricted lifting, bending, crouching, kneeling, crawling, and climbing. Id., Jennison 159-60. Two months later, Plaintiff filed the Complaint. Compl. Originally, she also sought relief against her employer, AIG, but stipulated to its dismissal in September 2010. Stipulation of Dismissal (Dkt. No. 18) ("Stip. of Dismissal").

## II. DISCUSSION

### A. Motion to Strike

#### 1. Standard of Review

"The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." Canady v. Erbe Electromedizin GmbH, 307 F. Supp. 2d 2, 7 (D.D.C. 2004); see also Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999) ("We will not disturb a district court's grant of a motion to strike unless manifestly erroneous."). However, the Second Circuit has established a strong preference for litigation disputes to be resolved on their merits,

and not by default.  See Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995); see also Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993); Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir. 1983); Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  When dealing with motions to strike pleadings, the Second Circuit has repeatedly found that dismissal is a drastic remedy and has shown a preference for allowing litigation to continue.  See Indep. Prods. Corp. v. Loew's Inc., 283 F.2d 730, 733 (2d Cir. 1960); Gill v. Stolow, 240 F.2d 669, 670 (2d Cir. 1957); Producers Releasing Corp. De Cuba v. PRC Pictures, 176 F.2d 93, 96 (2d Cir. 1949).  While striking a motion does not carry the weight of dismissing a complaint, the same desire to allow litigation to be resolved on its merits applies to striking motions; some courts have disallowed the practice altogether.  See Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983) ("only pleadings are subject to motions to strike"); Azikiwe v. Nigeria Airway, No. CV-03-6387, 2006 WL 2224450, at *1 (E.D.N.Y. July 31, 2006) ("Rule 12(f) applies only to pleadings and therefore does not provide a basis for striking defendants' motions.").  Ultimately, though, the decision to strike a motion lies within the trial court's discretion.

  FED. R. CIV. P. 56, which regulates summary judgment, contains no provision for striking motions, but does require that supporting affidavits "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  The Second Circuit has established that courts may strike portions of an affidavit that are not based upon the affiant's personal knowledge, are inadmissible, or make conclusory statements.  See Hollander, 172 F.3d at 198 (2d Cir. 1999).  However, motions to strike evidence supporting summary judgment motions "are unnecessary and produce only redundant statements by the court that it has not relied on such inadmissible evidence in deciding

5


the summary judgment motion." Ricci v. Destefano, No. 3:04 CV 1109, 2006 WL 2666081, at *3 (D. Conn. Sept. 15, 2006). See also Martin v. Town of Westport, 558 F. Supp. 2d 228, 231 (D. Conn. 2008) ("Defendants should have faith, however, that the court knows the difference between admissible and non-admissible evidence, and would not base a summary judgment decision simply upon the self-serving *ipse dixit* of a particular party."). As with striking motions, the trial judge has discretion when deciding motions to strike affidavits in support of summary judgment motions.

### 2. Application

Defendant claims that because the Cross-motion was filed after the deadline established in the Uniform Pretrial Scheduling Order, it was prejudiced by Plaintiff's opportunity to review Defendant's Motion and the length of time in which to respond was also truncated. Mot. to Strike at 2. Plaintiff's taking two weeks to prepare a Cross-motion in response to Defendant's Motion for summary judgment is not an excessive amount of time, nor is it unreasonable that Plaintiff would need to review Defendant's Motion in order to prepare a proper response. Additionally, if Defendant had needed more time to reply to Plaintiff's Cross-motion, her late filing would be good cause for requesting an extension of time to file a response.

Defendant also argues that Plaintiff's Affidavit and portions of the Response to the Motion to strike are improper and should be stricken. Reply to Resp. to Mot. to Strike at 3-7. The Court knows the difference between admissible and inadmissible evidence, and will only take admissible evidence into consideration when deciding the motions for summary judgment. See Martin, 558 F. Supp. 2d at 231. Because of the preference for resolving a case on its merits , and because it is fully capable of disregarding the self-serving *ipse dixit* of a particular party, the

6

Court concludes that the Motion to strike should be denied in its entirety.

### B. Motions for Summary Judgment

#### 1. Standard of Review

A court may grant summary judgment where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  For a motion to succeed, the moving party is required to present the basis for its motion and identify the evidence it believes demonstrates that no material dispute exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine dispute of material fact exists where there is enough evidence that a reasonable jury could find for the nonmoving party; if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248-50 (1986) (citations omitted).

On summary judgment, the court is not weighing the evidence, but determining the need for a trial.  Id. at 250.  Any inferences the court draws must be "viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  To establish the existence of a dispute, the nonmovant must show specific facts that constitute a genuine issue for trial; mere "metaphysical doubt" as to the facts is insufficient.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  If the nonmoving party fails to establish the existence of "an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted.  Celotex, 477 U.S. at 322.

#### 2. ERISA Preempts Plaintiff's State Law Claim

Congress enacted ERISA to standardize regulation of employee benefit plans.  See Aetna

Health Inc. v. Davila, 542 U.S. 200, 208 (2004).  Section 514 of ERISA ensures uniform federal regulation by superseding state laws that relate to employee benefit plans.  18 U.S.C. § 1144(a) (2010).  Any state law that "duplicates, supplements, or supplants the ERISA civil enforcement remedy" is therefore preempted by ERISA.  Davila, 542 U.S. at 209.  More specifically, several Supreme Court rulings have established that a plaintiff's state law breach of contract claim for ERISA-regulated plan benefits is preempted by ERISA.  See id. at 214; Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62 (1987); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 57 (1987).

According to the Complaint, Plaintiff is seeking relief from Defendant under ERISA and state contract law.  Compl. at 5-7.  Defendant correctly argues that Plaintiff's breach of contract claim is preempted by ERISA.  Defendant's Memorandum of law in support of their Motion for summary judgment (Dkt. No. 21-18) ("Def. Mem. in Supp. of S.J.") at 13-15.  Because Plaintiff's state law claim is for her ERISA-regulated plan benefits, the Court finds that ERISA preempts Plaintiff's breach of contract claim.

### 3. Application of ERISA

#### a. Statements of Material Fact

Defendant contends, in response to Plaintiff's Cross-motion for summary judgment, that deficiencies in Plaintiff's Response to Defendant's Statement of material facts should result in all of Defendant's material facts being admitted, pursuant to Local Rule 7.1 (a)(3).  Defendant's Memorandum in opposition to Plaintiff's Cross-motion for summary judgment (Dkt. No. 27) ("Def. Mem. in Opp'n to Pl. Cross-mot.") at 2-3.  As referred to in the above discussion of the Motion to strike, the Court prefers to resolve legislation on its merits, not on technicalities.  See Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995).  As such, the Court declines to deem all of

Defendant's material facts admitted, and the motions will be decided on their merits.

### b. Arbitrary and Capricious Review

Courts review administrators and fiduciaries' decisions regarding ERISA-regulated plan decisions *de novo*, relying on the administrative record, unless the plan grants its administrator authority to determine benefits eligibility or otherwise interpret the plan. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When a plan's administrator decides who is eligible for benefits according to the plan, that decision is subject to deferential review, and will not be overturned unless it is arbitrary and capricious. See Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). A decision is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003). To qualify as substantial, evidence must be such "that a reasonable mind might accept [it] as adequate to support the conclusion reached by the [administrator]," and must be more than a scintilla but does not need to constitute a preponderance. Id. Arbitrary and capricious review has a narrow scope; the Court is not allowed to substitute its own judgment for the plan administrator's. See Pagan, 52 F.3d at 442. In the Second Circuit, review under the arbitrary and capricious standard is limited to the evidence in the administrative record. See Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995). Based on a Plan provision granting Defendant "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions," the Court finds that Plaintiff's claim should be reviewed under an arbitratory and capricious standard. Huber Decl., Jennison 34.

Defendant argues that its denial of Plaintiff's LTD benefits was not arbitrary and

capricious, referring to various documents from the administrative record in support of its claim. Def. Mem. in Supp. of S.J. at 17-20.  Defendant cites to the FCE and ASPF recommendations made by Plaintiff's doctors that she could return to work as long as she changed her position every thirty minutes.  Id. at 17-18.  In addition, Defendant argues that the results of the various tests, including MRIs, x-rays, and nerve conduction studies conducted by Plaintiff's doctors failed to show that Plaintiff was disabled.  Id. at 19-20.

In response, Plaintiff cites to the "Standing/Sitting Tolerance" analysis section of the FCE, which shows a total sitting time of eleven minutes, as evidence that she can only sit for eleven minutes at a time.  Plaintiff's Memorandum of law in support of the Cross-motion for summary judgment (Dkt. No. 23-2) ("Pl. Mem. in Supp. of S.J.") at 10-12.  But there is no indication that this analysis indicates anything more than the amount of time Plaintiff sat as part of the test.  Huber Decl., Jennison 417.  Additionally, the analysis was conducted as part of the FCE, which concluded that Plaintiff could sit as long as she changed position every thirty minutes.  Huber Decl., Jennison 212.

Similarly, Plaintiff argues that Defendant's decision was unreasonable because she cannot sit for eight hours a day.  Pl. Mem. in Supp. of S.J. at 10-11.  Citing her job description, which requires her to sit constantly for eight hours a day, Plaintiff reiterates her claim that she cannot sit for more than eleven minutes at a time.  Id. at 11; Huber Decl., Jennison 339-40.  However, the conclusion of Plaintiff's doctors in their ASPFs and the FCE was that Plaintiff could return to her sedentary job, as long as she changed position every thirty minutes.  Id., Jennison 212-16, 321, 360.  Here, Plaintiff is erroneously conflating sitting constantly, which her physicians have allowed, and sitting without changing position.

The Court concludes that Defendant had sufficient evidence to support its denial of Plaintiff's claim for LTD benefits. Not one of Plaintiff's five treating physicians felt that her condition prevented her from returning to work. Id., Jennison 110, 204, 212-16, 223, 321, 360 Their opinions are supported by the various tests and examinations they made of Plaintiff. Id., Jennison 109-11. In Hobson, the Second Circuit affirmed an insurance company's denial of LTD benefits where the plaintiff's treating physicians opined that she was not disabled from working, and even in instances where they did. See Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 85-86 (2d Cir. 2009) (finding substantial evidence to support denial despite opinions from other physicians supporting disability); Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 141 (2d Cir. 2010) (finding denial of benefits was not arbitrary and capricious despite multiple reports supporting disability). Because Defendant had substantial evidence to support its denial of Plaintiff's LTD benefits claim, the Court finds its decision was not arbitrary and capricious.

Additionally, Plaintiff disputes that Defendant considered her condition in its entirety when denying her claim for LTD benefits. Pl. Mem. in Supp. of S.J. at 12-16. In response, Defendant points to the record to support its claim that as part of its review, Plaintiff's health was considered in its entirety. Def. Mem. in Opp'n to Pl. Cross-mot. at 10-12. Indeed, the administrative record indicates that Plaintiff's overall condition was considered by her treating physicians, by Defendant's administrator, and by the physician reviewing her file. Huber Decl., Jennison 107-12, 151-60, 320-25, 329-30. Given the evidence from the record, the Court is persuaded that Plaintiff's overall condition was considered in determining her ability to return to work was determined.

Plaintiff further contends that Defendant abused its discretion by denying her appeal with

an incomplete administrative record. Plaintiff alleges that Defendant's independent reviewer failed to obtain her medical records from, or otherwise contact Dr. Ortiz, who stated that she was disabled. Pl. Mem. in Supp. of S.J. at 7. However, it was Plaintiff's burden to demonstrate to Defendant that she was disabled. See Juliano v. Health Maint. Org. of N.J., 221 F.3d 279, 287-88 (2d Cir. 2000) ("[Plaintiffs] were required to prove their case; to establish that they were entitled to that benefit pursuant to the terms of the Contract or applicable federal law."). Accordingly, the Court finds that Plaintiff bore the burden of providing her records from Dr. Ortiz to Defendant.

Regardless, Dr. Marks' judgment is sufficient to uphold Defendant's denial of Plaintiff's appeal. The Supreme Court has held that administrators are not required to "accord special weight to the opinions of a claimant's physician; nor . . . [to explain] when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). See also Demirovic v. Bldg. Serv. 32 B-J Pension Fund, 467 F.3d 208, 212 (2d Cir. 2006) (holding that contrary findings by five treating physicians and the Social Security Administration did not render a decision based on the findings of administrator's two physicians arbitrary and capricious).

In his review of Plaintiff's medical records, Dr. Marks either spoke with or attempted to speak with all of her physicians: Dr. Dura and FNP Briggs were less than certain about Plaintiff's ability to work, but ultimately determined it was possible; Dr. Heister had changed practices and could not comment on Plaintiff's case without her file, which he did not have; and Drs. Ortiz and Rasheed did not return Dr. Marks' calls. Huber Decl., Jennison 156-58. Dr. Marks' report also discussed the results of Plaintiff's tests and examinations and, from the evidence available,

determined that Plaintiff "should physically be able to work at the sedentary level," as long as the work involved mostly sitting with the possibility to modify posture and change position as necessary. Id. at 5-7. Because Dr. Marks provided a detailed, substantive analysis of the case, the Court is persuaded that Plaintiff received a full and fair review of her appeal, further supporting Defendant's claim that it did not abuse its discretion when denying her claim.

### c. Defendant's Conflict of Interest

If a conflict of interest has biased the administrator's decision, then any deference accorded "drops away," and the standard of review reverts to *de novo* review. See Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1255-56. A conflict of interest exists where the evaluator and payor of benefit claims is the same party; however, unless there is evidence that the decision was influenced by the conflict of interest, the standard of review remains arbitrary and capricious review. See McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 130-31 (2d Cir. 2008). The plaintiff bears the burden of proving that the conflict "affected the reasonableness of the Committee's decision." See Sullivan, 82 F.3d at 1259 (quoting Pagan, 52 F.3d at 443).

Here, because Defendant is both the adjudicator and payor of benefits claims, it has an inherent conflict of interest. Huber Decl., Jennison 3-54. Despite a discussion of the competing standards of review in the Cross-motion, however, Plaintiff does not provide any proof that the conflict of interest has affected the reasonableness of Defendant's decision. Pl. Mem. in Supp. of S.J. at 8-16. Instead, Plaintiff merely requests that the Court consider Defendant's conflict of interest as a factor when determining whether it abused its discretion. Id. at 16. Accordingly, the Court reiterates that the arbitrary and capricious standard is the correct standard of review for Defendant's decision to deny Plaintiff's LTD benefits.

The Court now considers Plaintiff's claim that Defendant's dual role as adjudicator and payor of benefits affected its decision to deny her LTD benefits. The Supreme Court has established that a conflict of interest, such as that faced by an insurance company, is a factor that should be weighed when determining whether there has been an abuse of discretion. See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008). In Glenn, the Supreme Court found that the conflict of interest should prove less important, "perhaps to the vanishing point," where claims administrators were walled-off from firm finances. Id. Here, Defendant asserts, and Plaintiff does not challenge, that its claims department and appeals unit are completely separate from and have no involvement with the financial department. Declaration of Bruce Luddy (Dkt. No. 21-17) ("Luddy Decl.") at 3. Furthermore, Plaintiff's claim for LTD benefits was originally decided by an analyst in the claims department, approved by two other members of that department, and then reviewed by a member of the independent appeals unit. Id. at 1. Defendant's employees who decide and review claims are not rewarded for denying claims, nor are they discouraged from paying legitimate claims. Id. at 2-3. Given the structure of its claim-review process, the Court is persuaded that Plaintiff has not satisfied her burden to show that Defendant's conflict of interest played a factor in its decision.

### III. CONCLUSION

The Court has found that the arbitrary and capricious standard of review governs Defendant's denial of Plaintiff's LTD benefits. Therefore, to be granted her Cross-motion for summary judgment, Plaintiff is required to shown that the administrative record is such that no reasonable jury could find that there was any evidence to support Defendant's decision, or that it had any basis in reason. Conversely, Defendant is required to show that there is substantial

evidence in the administrative record to support its decision. Given the evidence in the record, the Court finds that no reasonable jury could find that Defendant's decision was not supported by substantial evidence. Therefore, Defendant's Motion for summary judgment is granted and Plaintiff's Cross-Motion is denied.

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to strike (Dkt. No. 29) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Cross-motion for summary judgment (Dkt. No. 23) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:     August 03, 2011
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

15